## REYNOLDSVILLE R. CO. v. BUFFALO R. CO.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF CLEARFIELD COUNTY.

Argued April 21, 1890—Decided May 5, 1890.

On the filing of a bill by a railroad company for an injunction to restrain
another company from constructing its railroad across that of the
plaintiff at grade, the court below awarded a preliminary injunction,
which, on motion to continue, was dissolved. On appeal to the Su-
preme Court, it was ordered that the decree dissolving the injunction be
reversed and the injunction reinstated until final hearing.*

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 174 July Term 1889, Sup. Ct.; court below, No. 1 Sep-
tember Term 1889, C. P. in Equity.

On May 20, 1889, the Reynoldsville & Falls Creek Railroad
Company filed a bill in equity against the Buffalo, Rochester
and Pittsburgh Railway Company, in which it was averred
that a portion of the plaintiff's railroad, called the Rochester
Mine Branch, was constructed over and across a tract of land,
No. 13, then owned by Albert C. Hopkins, from whom the
plaintiff had obtained the right of way and all the rights and
privileges incident thereto, for the construction, operation and
use of its line of road over said tract. The bill averred
further:

"6. That the defendant, the Buffalo, Rochester & Pitts-
burgh Railway Co., is a corporation existing under the laws of
the state of Pennsylvania, as complainant believes.

"7. That the said Buffalo, Rochester & Pittsburgh Railway
Co., on Saturday night, the 11th day of May, A. D. 1889, and
during Sunday, the 12th day of May, A. D. 1889, with a large
force of men did enter upon said tract of land No. 13, situate
in Sandy township, Clearfield county, aforesaid, the property

---

* The ground for this reversal may perhaps be found in Easton Pass.
Ry. Co. v. Easton, 133 Pa. on pp. 519–521. This is only a guess
though.—REP.

Opinion of Court below.

of A. C. Hopkins, and without any legal right or authority
from the said A. C. Hopkins, or from anyone else authorized
to grant to the said company defendant such right of entry,
and without legal and proper proceedings first being had, as
required by law, to secure the right of way thereover, did sur-
reptitiously and arbitrarily, and in violation of the rights
and property of the complainant company, and to the great
detriment, injury, damage and loss of the said complainant,
begin at the south end of the line of road owned or controlled
by the said Frank Morrison, with which your complainant
company had heretofore had and maintained a connection as
hereinbefore set forth, and did make and construct several rods
of railroad from said point of connection, in the direction of
the main line of the Buffalo, Rochester & Pittsburgh Railway
Co., and did manifest and proclaim its intention of holding,
occupying and using said ground for the construction of a
branch railroad thereon, in the manner aforesaid."

Upon the foregoing and other averments of the bill, the
plaintiff prayed for an injunction restraining the defendant
company " from building or making its said road over and
across the track of your said complainant, at the point afore-
said, or in any manner interrupting, interfering with, or en-
croaching upon any of the said rights, property and privileges
of your complainant, at the place aforesaid, as now held, used
and occupied by complainant;" and for further relief. A bond
being filed, a preliminary injunction was awarded and served,
and a day fixed for the hearing of a motion to continue.

On June 8, 1889, after argument of said motion, it was or-
dered that the cause be put at issue, and that a master be ap-
pointed, or, if desired, the judge would take the testimony, and
hear and determine the cause, the injunction to stand.

On July 1, 1889, a rehearing was had on the testimony sub-
mitted by affidavits, and on July 8, 1889, the court, KREBS,
P. J., filed the opinion and decree following:

This bill was filed on May 20, 1889, and on the same day a
preliminary injunction was issued, enjoining and restraining the
defendant company from entering on the premises mentioned
in the bill, and from in any manner interrupting and inter-
fering with and encroaching upon the rights, property and

privileges of the complainant, at the point or place indicated in said bill. On the 25th day of May, the time fixed for the hearing of a motion to dissolve the preliminary injunction, the same was continued until a day subsequent, and on the 8th day of June, after hearing had, an order was made by the court in which it was stated that:

" The questions involved in the correct decision of the matter in controversy are left so uncertain, that I am not enabled to determine and decide the same without further testimony. It is, therefore, ordered that the answer be filed, and when filed, printed; that complainant join issue by filing the usual replication, and upon it being done, either a master will be appointed to hear the testimony and report the facts, or, if desired, I will hear and determine the same without the intervention of a master. In the meantime the injunction is continued, to preserve the present status of the parties until further hearing had, or order in that behalf made."

On June 18, 1889, the respondent company filed an application for a re-hearing, for the reasons therein set forth, amongst others, alleging .error on the part of the court in continuing the preliminary injunction upon the bill and affidavits presented at the former hearing. After consideration had, it was ordered that a re-hearing in the matter of a motion to continue the injunction be had, and the same was heard on the first Monday of July, 1889. At this re-hearing both the plaintiff and defendant companies presented additional affidavits bearing upon the question involved in this case.

The first and important question underlying the entire proceeding, on the part of the complainant, is that of priority of location. If the complainant has established, to a reasonable certainty, that it had the prior location of its branch line of road, at that point where the defendant company constructed that part of its road in controversy, or the branch connecting with its main line, then no error was committed by the court in its order continuing the preliminary injunction. An attentive consideration of the bill of the complainant· shows that the main feature relied upon in the bill itself was that the complainant had obtained from A. C. Hopkins, the owner of the tract of land over which these two branch lines of road are constructed, the right to construct its road, and branch or

branches, and that the defendant company had entered upon the same land without having obtained any such right from Mr. Hopkins. It is not distinctly and clearly averred in any part of the complainant's bill, that the company had, by actual location made, as directed by the act of assembly relating to the construction of railroads, entered upon the land to survey, ascertain, locate, fix, mark and determine the route for its branch road, and marked by appropriate marks upon the ground the course of its line of road as now constructed.

—The court then proceeded to consider the testimony presented upon the affidavits read, in relation to the question whether, and if so when, the plaintiff company had made a legal location of its road, and when the defendant company had made its location and what had been done to define it, citing Titusville etc. R. Co. v. Warren etc. R. Co., 4 Leg. Gaz. 117, and then proceeded:

After careful consideration of the testimony in this cause, shown by these affidavits, upon the hearing and re-hearing, we cannot come to any other conclusion than that there is not only reasonable but very serious doubt whether or not the complainant had any such location in law, as can prevail, and, being so in doubt under the law as we view it, the injunction cannot continue, and must be dissolved.

Whether or not a crossing shall be made at grade or overhead, by the company who is subsequent in point of location, upon final hearing, is a matter not now to be passed upon. All that is decided by this case is that the preliminary injunction asked for by complainant must be dissolved.

Whether or not there shall be sufficient good sense displayed by the managers of these branch roads, to adjust this difficulty without further appeal to the court, and the useless expenditure of time and money, is a matter not for the court to decide.

It is ordered that the preliminary injunction heretofore issued, be, and is hereby dissolved.

—Thereupon the plaintiff took this appeal, assigning the refusal of the court to make the injunction perpetual, and the decree dissolving the preliminary injunction, for error.

*Mr. George A. Jenks* and *Mr. Frank Fielding*, for the plaintiff. Counsel cited: § 7, act of April 15, 1851, P. L. (1852) 722;

Syllabus.

Dimmick v. Brodhead, 75 Pa. 464, 467; Oliver v. Railway Co., 131 Pa. 408; Edgewood R. Co.'s App., 79 Pa. 257; McCandless's App., 70 Pa. 210; Stewart's App., 56 Pa. 241; Pittsb. etc. R. Co. v. Railway Co., 77 Pa. 173.

*Mr. Thomas H. Murray* (with him *Mr. C. H. McCauley* and *Mr. Cyrus Gordon*), for the defendant.

Counsel cited: Pittsb. Junction R. Co.'s App., 122 Pa. 529; § 1, article XVII. of the constitution; Pittsb. etc. R. Co. v. Railroad Co., 81* Pa. 112; Cleveland etc. R. Co. v. Speer, 56 Pa. 335; Black v. Railroad Co., 58 Pa. 249; Pittsburgh v. Railroad Co., 48 Pa. 355; § 9, act of April 4, 1868, P. L. 62; Mammoth Vein Coal Co.'s App., 54 Pa. 183, 189.

PER CURIAM:

We are of opinion that the decree should be reversed, and the injunction reinstated until final hearing. Until then, in accordance with our rule, we will not discuss the merits of the case.

> The decree is reversed, at the costs of the appellee, and the injunction reinstated until final hearing. The record is remitted to the court below, with instructions to carry this order into effect.